Alvin J. Linton v. Commissioner.
Linton v. Commissioner
Docket No. 2297-70-SC.
United States Tax Court
T.C. Memo 1971-19; 1971 Tax Ct. Memo LEXIS 311; 30 T.C.M. (CCH) 88; T.C.M. (RIA) 71019; January 25, 1971. Filed. Alvin J. Linton, pro se, 9824 Audelia Road, Dallas, Tex., W. John Howard, Jr., for the respondent. GUSSIS
Memorandum Findings of Fact and Opinion GUSSIS, Commissioner: Respondent determined a deficiency in petitioner's Federal income tax for 1966 in the amount of $214.72 The issues are (1) whether petitioner qualified for head of household status in 1966 and (2) whether he is entitled to child care deductions in 1966 in the amount of $900. Findings of Fact Some of the facts were stipulated and they are so found. Alvin J. Linton, hereinafter called the petitioner, was a resident of *312 Dallas, Texas on the date the petition in this proceeding was filed. Petitioner filed this Federal income tax return for 1966 with the district director of internal revenue, Greensboro, North Carolina. Petitioner was employed as an auditor during the year 1966 with the United States Bureau of Public Roads in Raleigh, North Carolina. On April 20, 1966, the Superior Court of Wake County, North Carolina filed its order in an action brought by petitioner's wife, Mauricette Linton, against the petitioner. The Superior Court's order stated in part as follows: This cause coming on to be heard and being heard in chambers before the undersigned Judge of the Superior Court Residing in the Tenth Judicial District upon application of the plaintiff [Mauricette] for alimony pendente lite and for allowance of counsel fees under G.S. 50-16; and said cause having been heard on plaintiff's complaint taken as an affidavit and supporting affidavits and the defendant's answer likewise taken as an affidavit and on supporting affidavits filed herein by the defendant. * * * NOW THEREFORE IT IS ORDERED THAT the defendant pay to the plaintiff for her alimony subsistence during the pendency of this action *313 the sum of $50.00 on or before the 22nd day of April, 1966, and continuing with payments to her of the same amount of money at the end of each biweekly pay period thereafter during the pendency of this action or until further orders of this Court. AND IT IS FURTHER ORDERED THAT because the plaintiff now has no home in which she could keep the children of the marriage and care for them in her custody the defendant is, by this order, directed to retain custody of said children, care for them and support them in his home * * * during the pendency of this action and until further orders of this Court. AND IT IS FURTHER ORDERED THAT the plaintiff be and she is hereby granted the right to visit said children and to have them in her custody between the hours of 9:00 A.M. and 7:00 P.M. on Saturday of each week, * * *. After the Court order of April 20, 1966, the petitioner had custody of the three children, Robert, Malika and Alvin, whose respective ages in 1966 were 6 years, 5 years and 3 years. No subsequent orders were issued by the Superior Court in this matter. On July 3, 1968, a decree of divorce was entered by the District Court, 166th Judicial District, Bexar County, Texas *314 granting the petitioner a divorce from Mauricette. Under the decree, the petitioner obtained custody of the three children. Petitioner and Mauricette filed separate income tax returns for the year 1966. During the year 1966 the petitioner incurred expenditures in the amount of $965 for the care of his three children while he was gainfully employed. On his Federal income tax return for 1966, the petitioner claimed a dependency deduction for each of the three children. Petitioner also claimed a deduction for child care expenses in the amount of $900 on his 1966 income tax return. Petitioner indicated on the face of his 1966 income tax return that he was claiming head of household status. Respondent disallowed the child care deduction on the ground that petitioner was legally married for the entire year 1966 and consequently did not qualify for the deduction under the provisions of section 214 of the Internal Revenue Code of 1954. [1] On the same ground, i. e., that petitioner was legally married as of the end of 1966, respondent determined that petitioner did not qualify as head of household under the provisions of sections 1(b)(2) and 1(b)(3)(B) as applicable *315 during the year 1966. Consequently, respondent computed petitioner's 90 income tax liability for 1966 on the basis of a married man filing separately. Opinion The issues are (1) whether petitioner is entitled to a deduction for child care expenses of $900 (the maximum allowable) in 1966 under the provisions of section 214 and (2) whether petitioner qualifies for head of household status in 1966 within the meaning of section 1(b)(2) and 1(b)(3) (B). Both issues turn upon the legal effect to be given to the order of the Superior Court of North Carolina dated April 20, 1966. It is respondent's contention that the Court order did not constitute a legal separation of petitioner and Mauricette in 1966 and that, consequently, petitioner must fail under both issues. Section 214(a) allows a deduction for child care expenses paid during the taxable year "by a taxpayer who is a woman or widower, or is a husband whose wife is incapacitated or is institutionalized." Section 214(d)(2) states that "[the] term 'widower' includes an unmarried individual who is legally separated from his *316 spouse under a decree of divorce or of separate maintenance." Section 1(b) provides special tax rates for taxpayers qualifying as heads of households. Section 1(b)(2) provides that "an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year" and meets certain other requirements. Section 1(b)(3)(B) provides that "an individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married." Petitioner obtained a divorce from his wife under a decree entered by the District Court, 166th Judicial District, Bexar County, Texas on July 3, 1968. We are concerned here with his marital status in 1966. Petitioner can prevail here, both as to the child care deduction and as to his claimed status as head of household, only if the North Carolina Superior Court order of April 20, 1966, constituted a legal separation under a decree of separate maintenance. It is quite apparent that it did not constitute a legal separation under a decree of divorce. See sections 50-5 and 50-7 (Chapter 50) of the General Statutes of North Carolina (Volume 2A, 1966 Ed.) which *317 provide for absolute divorce and for limited divorce, respectively. The Superior Court order of April 20, 1966, states in the first paragraph that the cause therein arose upon application of petitioner's wife "for alimony pendente lite and for allowance of counsel fees under G.S. 50-16." Section 50-16 of the General Statutes of North Carolina provides in part as follows: If any husband shall separate himself from his wife and fail to provide her and the children of the marriage with the necessary subsistence according to his means and condition in life, or if he shall be a drunkard or spendthrift, or be guilty of any misconduct or acts that would be or constitute cause for divorce, either absolute or from bed and board, the wife may institute an action in the superior court of the county in which the cause of action arose to have a reasonable subsistence and counsel fees allotted and paid or secured to her from the estate or earnings of her husband, * * *. This section of the North Carolina statutes is essentially one for support. See Reece v. Reece, 232 N.C. 95, 59 S.E. 2d 363 (1950). It provides a remedy for an abandoned wife to obtain support from the estate or *318 earnings of her husband. Shore v. Shore, 220 N.C. 802, 18 S.E. 2d 353 (1942). Under this section a wife may obtain support payments without divorce and she may also obtain, under certain circumstances, a reasonable subsistence and counsel fees pendente lite. See Fogartie v. Fogartie, 236 N.C. 188, 72 S.E. 2d 226 (1952). It is clear, we believe, that an order or decree issued by a North Carolina Court under section 50-16 does not constitute a decree of separate maintenance but is merely an order enforcing a husband's marital duty to support his wife. See Reece v. Reece, supra; see also Rev. Rul. 58-321, 1958-1 C.B. 35. Petitioner argues that it was the intent of Congress to give relief to someone in petitioner's situation and that "a local statute, such as North Carolina's, should not be allowed to interefere with the national law." We believe, however, that Congress made its intention unmistakably clear in granting relief under sections 214 and 1(b) only to carefully described categories of taxpayers. Insofar as such categories depend upon the taxpayer's marital status, we must of course look to the local State statutes which *319 control the marital status of the taxpayer. 91 We hold that petitioner was not legally separated from his spouse under a decree of divorce or of separate maintenance in 1966 and consequently is entitled neither to the child care expense deductions under section 214 nor to the status of head of household within the meaning of section 1(b). Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩